UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 07-194 (JNE/FLN) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Anthony Joseph Tenerelli, | |
| Defendant. | |

David P. Steinkamp, Assistant United States Attorney, for the Government.
Andrea K. George, Assistant Federal Defender, for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 20, 2007, on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#35], Defendant's Motion to Suppress Statements, Admissions and Answers [#36], Defendant's Motion to Disclose and Make Informant Available for Interview [#38] and Defendant's Motion to Suppress Eyewitness Identifications [#40]. At the hearing, the Court received testimony from Ramsey County Deputy Sheriff Douglas Wood. Both parties submitted exhibits during the hearing.[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motions be **GRANTED in part** and **DENIED in part**.

**I. FINDINGS OF FACT**

Deputy Wood has been employed by the Ramsey County Sheriff's Department for 29

---

[1] Gov't Ex. 1 is a Search Warrant for a home in St. Paul.
Gov't Ex. 2 is a Search Warrant to take a DNA sample of the Defendant.
Gov't Ex. 3 is a Search Warrant for a home in Columbia Heights.
Def. Ex. A is a Search Warrant Return for the house in Columbia Heights.

years.  He has been an investigator with the narcotics task force for the last 8 years and has personally prepared between 100 and 150 search warrants, including those in this case, and has participated in the execution of many others he did not draft.

Deputy Wood executed the warrant at a home in Columbia Heights.  (*See* Gov't Ex. 3.) The warrant authorized the seizure of the following:

> Methamphetamine, papers, invoices, billings, charge plates, letters or other items that would indicate the owner/renter/occupant of the premise.  Moneys, bankbooks, bank statements and other items used or maintained which would show profit or sale.  Safes and lockboxes.  Weapons, guns, ammunitions, scales, paraphernalia and other items used for distribution or consumption of controlled substances.  Other controlled substances contained in the Controlled Substance Laws.  Photographs, address/phone books, pagers, scanning devices, safe deposit box keys.  Cellular phones.  Computers, computer hard drives and all information storage type devices for computers.

(*See* Gov't Ex. 3.)

During the search, Wood seized a large black bag, listed as item 20 on the search warrant return.  (*Id*.)  Wood also prepared a supplemental property record listing the items seized from the black bag. (Def. Ex. A at 0000021.)  Prior to seizing the black bag listed as item 20, Wood testified that he seized a nylon bag from the living room which contained controlled substances and a firearm.  Wood testified that he looked in the item 20 black bag, saw tapes and a computer hard drive and seized them because they were covered by the search warrant.  Wood testified that he also seized a pair of men's jean shorts and two leather coats, men's size large, because the clothes appeared to fit the Defendant and could be used as evidence to prove Defendant's residence.  Wood also testified that he seized a cassette recorder, described as an Olympus 3300 Micro Cassette Recorder in the property record, (Def. Ex. A at 000082.), because in his training and experience, drug dealers are known to tape drug transactions.   Wood testified that he also

seized a camera which is described in the property record as a closed circuit camera (*Id*. at 0000080.) because in his training and experience, drug dealers use these devices to alert themselves to when police come to the door.

## II.  CONCLUSIONS OF LAW

### A.  Defendant's motion to disclose and make informant available for interview [#38].

Defendant's motion is granted to the extent that the Government must make the informant available for interview if it plans to call him or her as a witness or offers any evidence at trial to which the informant was a witness regardless of whether the informant himself or herself is called as a witness.  *See Roviaro v. United States*, 353 U.S. 53, 60-61 (1957).  The motion is denied in all other respects.

### B.  Defendant's motion to suppress statements, admissions and answers [#36].

The Court recommends that this motion be denied as moot based on the Government's representation at the hearing that it does not intend to use, in its case-in-chief at trial, any statements made by the Defendant.  (Tr. at 5.)

### C.  Defendant's motion so suppress eyewitness identifications [#40].

The Court recommends that this motion be denied as moot based on the Government's representation at the hearing that it will not call the witness who identified the Defendant from a Ramsey County Sheriff's Department photograph.  (Tr. at 10-11.)

### D.  Defendant's motion to suppress evidence obtained as a result of search and seizure [#35].

The Court recommends that Defendant's motion be granted in part and denied in part. The Court addresses Defendant's arguments in turn.

### 1. Probable cause was not fatally stale when the warrant was executed.

Probable cause was not stale at the time the search warrant was executed. The warrant was executed six days after it was issued. Under Minnesota and federal law, a warrant must be executed within ten days after issuance. Minn. Stat. § 626.15(a); Fed. R. Crim. P. 41(e)(2)(A)(i). Nevertheless, search warrants must be executed "promptly" and a Court may determine that a warrant was stale before the ten days expired if it finds that probable cause did not exist at the time the warrant was executed. *U.S. v. Shegog*, 787 F.2d 420, 422 (8th Cir. 1986). Or, a Court may determine that a warrant was not stale when executed if it finds that probable cause continued to exist at the time the warrant was executed. *Id*.

The Court looks to the following factors to determine whether or not probable cause continued to exist at the time the warrant was executed: (1) lapse of time since the warrant was issued; (2) the nature of the criminal activity; and (3) the kind of property subject to the search. *U.S. v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997). In this case, the warrant was executed six days after its issuance, within the ten day maximum amount of time allowed.

### a. The nature of the criminal activity.

The most important factor in this case is the nature of the criminal activity. In *United States v. Williams*, 10 F.3d 590, 595 (8th Cir. 1993), the defendant challenged the validity of a warrant that was executed eight days after it was issued. In rejecting the defendant's argument, the Court of Appeals concluded that the "ongoing nature of cocaine trafficking supports the continued existence of probable cause" and "it is reasonable for law enforcement officers to conclude that large-scale drug operations continued at the same location for a period of time." *Id*. The court also concluded that, based on a number of cases where warrants were issued after

a substantial lapse in time after the evidence was observed, that "the very nature of the evidence sought may suggest that probable cause is not diminished solely by the passage of time." *Id*. at n.3; *see also U.S. v. Shegog*, 787 F.2d 420, 422 (8th Cir. 1986) (holding that warrant was not stale when executed 8 days after issuance because defendant's drug dealing was ongoing); *U.S. v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) ("Where continuing criminal activity is suspected the passage of time is less significant.").

In this case the Government objected to Defendant's argument that the search warrant was stale because the Defendant did not raise the issue in his motions or at the suppression hearing. The Government requested to reopen the matter to present further evidence. The Court concludes that reopening the matter is not necessary. The search warrant affidavit presents evidence of the Defendant's ongoing drug activity. A confidential reliable informant ("CRI") met with Deputy Wood and told him that she had seen the Defendant in possession of large amounts of methamphetamine over the last several months; that the Defendant had no job and derives his income from selling drugs. (Gov't Ex. 3 at 3.) The CRI informed Deputy Wood that the Defendant drove several Cadillacs and a motorcycle. (*Id*.) She informed him that the Defendant gave her a phone number she could call to purchase methamphetamine. (*Id*.) The CRI made a controlled buy of methamphetamine from the Defendant. (*Id.*) In addition to receiving information from the CRI, Deputy Wood also spoke with a Cooperating Arrested Individual ("CAI") who stated he/she had bought methamphetamine from the Defendant on multiple occasions within the last year; and that the Defendant stores large amounts of methamphetamine at his parents' home and at the home he shared with his live-in girlfriend. (Gov't Ex. 1 at 2.)

The Defendant argues that the evidence should be suppressed because no evidence was obtained after the original probable cause determination. He cites to a district court case for the proposition that such an occurrence is "troubling." *U.S. v. Robinson*, 441 F.Supp.2d 1029, 1034 (D. Minn. 2006). The court in *Robinson* nevertheless concluded that the search warrant was not stale when taking into consideration the nature of the evidence - evidence of residency and bank statements - which the court concluded would reasonably remain at the residence even ten days after issuance of the warrant. Moreover, the Eighth Circuit has consistently upheld warrants executed over six days after issuance when there was evidence of continuing or long-term criminal activity. *Gibson*, 123 F.3d at 1124 (CI's statements about drug trafficking activity at apartment and police observation of traffic in and out of apartment indicated on-going drug activity); *U.S. v. McCoy*, 6 Fed.Appx. 493, 495-96 (8th Cir. 2001) (given suspect's history of drug dealing and ongoing investigation, there "was no reason for officers to believe that the warrant would become stale before the expiration date").

**b.  The kind of property subject to the search.**

In this case, the warrant authorized the seizure of a number of items related to dealing drugs including drugs, cash, weapons, and bank records showing profit of sale. The Court concludes that it was reasonable for Officer Wood to suspect that such items would remain in the defendant's home six days after the issuance of a search warrant. *Cf. Robinson*, 441 F.Supp.2d at 1034 (holding it was reasonable for police to assume they would find evidence of residency and bank statements ten days after warrant issued). The Court rejects Defendant's staleness argument.

### 2. Deputy Wood improperly seized clothing, a closed circuit camera and a cassette recorder.

Under the Fourth Amendment, a warrant must describe with "particular[ity] . . . the persons or things to be seized." U.S. Const. amend. IV. Defendant contends that videotapes, clothing, a closed circuit camera, and a cassette recorder were unlawfully seized because they were not particularly described as items to be seized in the search warrant. The videotapes at issue were lawfully seized but the clothing, closed circuit camera and mini-cassette recorder must be suppressed.

#### a. The videotapes.

The videotapes were lawfully seized because the warrant authorized the seizure of "photographs." As the Government noted, in a similar fact situation, the Eighth Circuit held that: "[t]he failure of the warrant to anticipate the precise form in which pictorial identification of [the defendant] or possible co-defendants would appear is not fatal." *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995). The Court agrees with the Government's argument that the videotapes fit within the common sense description of photographs given that a video tape contains nothing more than a collection of still images. The facts in this case fall within the Eighth Circuit's holding in *Lowe*. The videotapes were lawfully seized.

#### b. The clothing, closed circuit camera and mini-cassette recorder.

A valid search warrant must describe with "sufficient particularity the things to be seized" to prevent unwarranted intrusion into a person's privacy. *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986) (quoting *Coolidge v. New Hampshire*, 403 U.S. 433, 467 (1971)). In this case, the search warrant did not authorize the seizure of clothing, cameras or recorders and therefore absent some exception, the items should be suppressed.

The plain view exception does not apply to these facts.  Evidence that is in plain view may be seized without a warrant if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object.  *Horton v. California*, 496 U.S. 128, 136-37 (1990).  The incriminating nature of an item is immediately apparent if police have probable cause to believe it is evidence of a crime.

In *Arizona v. Hicks*, 480 U.S. 321 (1987), the Supreme Court held that the plain view doctrine did not authorize a seizure or further search where the investigating officers only have a reasonable suspicion (but not probable cause) to believe the items found in plain view are evidence of a crime.  In *Hicks*, while lawfully in an apartment to investigate a shooting, policemen observed expensive stereo equipment that they reasonably suspected was stolen.  Without a warrant, they recorded the serial numbers of the equipment.  Using the serial numbers, the officers confirmed (by telephoning police headquarters) that at least one piece of the stereo equipment was stolen, and they seized it.

In holding that the recording of the serial numbers was an unreasonable search under the Fourth Amendment, Justice Scalia, writing for the Court, concluded that even though police were lawfully in the apartment (to investigate the shooting), they only had a reasonable suspicion, not probable cause to believe the stereo equipment was stolen.  The plain view exception to the warrant requirement would not have permitted the seizure of the equipment.  Like the policemen in *Hicks*, the officers here had at most a reasonable suspicion that the clothing, camera and recorder were evidence of a crime.  As in *Hicks*, the plain view doctrine did not support their seizure.

The Government's reliance on the inevitable discovery exception is likewise misplaced. This exception applies "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). In *Nix v. Williams*, a lawful search was already underway which would have inevitably disclosed the whereabouts of the body at issue. The Court held that evidence of the body was therefore admissible even though police unlawfully elicited from the defendant (in violation of his Sixth Amendment right to counsel) the same information before the searchers actually found the body.

Here, the Government has failed to establish that the evidence at issue would have been lawfully seized, ultimately and inevitably. Although Deputy Wood testified he would have sought another search warrant had he known that he was not allowed to seize the clothing, the closed circuit camera and the micro-cassette recorder under the plain view exception, this testimony is insufficient to meet the Government's burden.

The Government's argument misconceives the inevitable discovery doctrine. The question is not whether the police could have obtained the evidence by some lawful means had they known the means they chose was unlawful. The question is whether the evidence <u>would have</u> inevitably been discovered by some lawful means if the Government's unlawful conduct had not intervened. The purpose of the inevitable discovery doctrine, like the exclusionary rule itself, is simply to deprive the Government of the evidence it has unlawfully acquired, but to ensure the Government is not put in a worse position than it would have been in, if no unlawful conduct had occurred at all. *Id.* at 443-444. Here there is simply no evidence that any lawful process was in place that would have ultimately and inevitably led to the seizure of the clothing,

the camera and cassette recorder, if the agents had not exceeded the scope of the warrant and seized them in violation of the Fourth Amendment.

### 3. The manner in which the search warrant was executed did not violate the Fourth Amendment.

The Defendant argues that all of the evidence obtained under the search warrant should be suppressed because Deputy Wood flagrantly disregarded the limitations of the search warrant. "A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized." *Martin v. United States*, 732 F.2d 669, 674-75 (8th Cir. 1984) (citing *United States v. Heldt*, 668 F.2d 1238, 1259-60 (D.C. Cir. 1981)). The court in *Heldt* adopted the rule that absent some flagrant disregard, "the appropriate rule seems to be that where officers seize some items outside the scope of a valid warrant, this by itself will not affect the admissibility of other contemporaneously seized items which do fall within the warrant." *Heldt*, 668 F.2d at 1259.

In this case, Deputy Wood seized clothing, a closed circuit camera and a micro-cassette recorder, items that were not authorized to be seized in the search warrant. He did, however, seize around thirty items that were within the scope of the warrant. Deputy Wood's seizure of three items that were not listed on the search warrant violated the Fourth Amendment. That violation is fully remediated by suppression of those items. The Court concludes that Deputy Wood did not so flagrantly disregard the terms of the warrant so as to mandate the suppression of all evidence seized during the search.

### III. ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion to disclose and make informant available for interview [#38] be **GRANTED in part** and **DENIED in part** as follows:

1. To the extent that the Government plans to call the informant as a witness or offers any evidence at trial to which the informant was a witness, the motion is **GRANTED**.

2. The motion is **DENIED** in all other respects.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motions [#35, #36 and #40] be **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent that Defendant seeks suppression of evidence obtained as a result of search and seizure [#35], the motion should be **GRANTED** with respect to the clothing, the closed-circuit camera and the mini-cassette recorder. The motion should be **DENIED** to the extent Defendant seeks to suppress the videotapes.

2. To the extent Defendant seeks to suppress statements, admissions and answers [#36], the motion should be **DENIED** as moot.

3. To the extent Defendant seeks to suppress eyewitness identifications [#40], the motion should be **DENIED** as moot.


DATED: January 9, 2008               s/ *Franklin L. Noel*
                                     FRANKLIN L. NOEL
                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 29, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 29, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.